IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DESIRE CHEDJIEU                                                                      PLAINTIFF

V.                                      4:19CV00575 JM

ARKANSAS NATURAL
RESOURCES COMMISSION                                                 DEFENDANT

# ORDER

Plaintiff was an engineer for Defendant Arkansas Natural Resources Commission ("ANRC") from May 2015 until he was terminated on June 18, 2018. Plaintiff claims that he was terminated based on his race, national origin, age, disability, and in retaliation for filing a charge with the EEOC for hostile work environment and discrimination. Pending is the Defendant's Motion to Dismiss. Plaintiff, acting pro se, objects to the motion. In the alternative, Plaintiff asks the Court to dismiss his complaint without prejudice.

I.      Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40

L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")).

Although "[g]reat precision is not required of the pleadings," the complaint should state how, when, and where the cause of action occurred. *Gregory v. Dillard's Inc.,* 494 F.3d 694, 710 (8th Cir. 2007). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic*, 127 S.Ct. at 1966 (internal citations omitted). "[A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)).

I. <u>Analysis</u>

A. <u>Exhaustion</u>

In the motion to dismiss, Defendant argues that Plaintiff's complaint should be dismissed because he has failed to exhaust his administrative remedies by obtaining a right to sue letter from the United States Attorney General. In addition to receiving a right to sue letter from the EEOC, an employee who works for a governmental agency is required to obtain a right to sue letter from the United States Attorney General. However, it is now settled law that this requirement, while statutory, is not jurisdictional and is subject to equitable waiver or tolling. *English v. Ware Cty. Dep't of Family & Children Servs., Div. of the Georgia Dep't of Human Res.*, 546 F. Supp. 689, 692 (S.D. Ga. 1982). Under the facts of this case, the Court finds that the

requirement should be waived, and Plaintiff allowed to proceed. *See Woods v. State of Mo. Dep't of Mental Health, Kansas City Reg'l Diagnostic Ctr.*, 581 F. Supp. 437, 443 (W.D. Mo. 1984).

B. Race and National Origin

Plaintiff, who is proceeding pro se, filed a form complaint. On the form, Plaintiff states that he is attaching addenda, along with his EEOC filings, as statements of fact supporting the claims in his complaint. Plaintiff attached 45 pages of documentation, including letters, emails, doctor's notes, employment evaluations, and his own written narrative to his complaint. In his narrative, Plaintiff states:

> Initially, my manager/supervisor was Trevor Timberlake. We worked very well together as evidenced by the performance evaluation. I was given- above standard with high scores. See addendum 3. Mr. Timberlake re-located, and Mr. Bill Ruck took over as Supervisor in November 2017. From the very beginning, unfortunately, I noticed an indifference towards me, I perceived because of my race, Black and national origin, Cameroon and age. . . .

(ECF No. 2 at p. 7). Plaintiff alleges that on December 21, 2017 Ruck interrupted him "in a rude, hurried manner, pointing his finger at me saying: 'You are not a manager here, you have to learn how to speak English.'" (ECF No. 2 at p. 8). There are no other references to race or national origin included in the complaint.

While Plaintiff alleges that Ruck made a discriminatory comment regarding his national origin, this comment is not evidence of direct discrimination and is not enough to withstand a motion to dismiss. "Direct evidence is evidence that establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Tarasenko v. Univ. of Arkansas*, 63 F. Supp. 3d 910, 919–20 (E.D. Ark. 2014) (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006)). "[S]tray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the

3

decisional process itself" are not direct evidence of discrimination. *Id.* (quoting *Browning v. President Riverboat Casino–Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998)).

After review of the material attached to the complaint, the Court finds that Plaintiff's race and national origin claims are conclusory. His allegations fall short of the pleading standards of the Federal Rules of Civil Procedure as interpreted by *Twombly*.

C. Age

Plaintiff fails to state any grounds for his age discrimination claim except that he is 47 years old. This conclusory allegation is insufficient to state a claim under Rule 12(b)(6). *See Tarasenko v. Univ. of Arkansas*, 63 F. Supp. 3d 910, 919 (E.D. Ark. 2014).

D. Disability

In 2017, Plaintiff was injured in a fall that resulted in severe damage to his spinal cord. As a result, Plaintiff has residual spastic tetraplegia.[1] (ECF No. 2 at p. 22). He must use a rolling walker or wheelchair at work for mobility. In his complaint, Plaintiff states, "I believe the major reason I was discharged was because I also am handicapped." *Id.* at p. 7. Plaintiff references his May 2017 Employee Performance Evaluation where he received the highest ratings possible from his supervisor Trevor Timberlake. *Id.* at p. 12-13. In his next Performance Evaluation, written by supervisor William Ruck in 2018, Plaintiff received an overall rating of "unacceptable." *Id.* at p. 14-17. Plaintiff contends that his job performance did not decline, and he was never counseled for sub-par performance. He states, "Even with my spinal cord injury, I was working diligently with the ANRC and under the Family Medical Leave Act. (FMLA), see addendum 5." *Id.* Plaintiff recounted only one conversation with Mr. Ruck where he made a reference to Plaintiff's disability:

---

[1] Spastic tetraplegia, or spastic quadriplegia, is defined as a spastic paralysis of the legs. The Merriam-Webster.com Medical Dictionary, http://www.merriam-webster.com/medical/spastic%20paraplegia. Accessed 12/12/2019.

4

> We were in discussion about ways to fix the problem on the Leakwood Dam #2. He stated my suggestion should be based on calculations and site visit data in order to do the job. I then suggested we ask the owner for construction site data documents as well as sending one of our representatives [for a] construction site investigation. Once this information is gathered, then I could complete the project. His response was, "You can roll your wheelchair there to see it; you can also ask one of your friends to push you there."

*Id.* at 27.

To state a claim under the Americans with Disabilities Act, "the plaintiff must demonstrate that he has a disability as defined in the ADA; that he is qualified to perform the essential functions of the job at issue, either with or without reasonable accommodation; and that "because of" his disability, he suffered an adverse employment action." *Burroughs v. City of Springfield*, 163 F.3d 505, 507 (8th Cir. 1998). Plaintiff has stated that he has a disability and that he was qualified to perform his job. However, after carefully reviewing Plaintiff's complaint and the addenda, the Court is unable to find sufficient factual allegations to support causation. Plaintiff's complaint fails to state a claim upon which relief can be granted for discrimination based on his disability.

E. <u>Retaliation</u>

Plaintiff alleges that he was terminated on June 18, 2018 in retaliation for filing a charge of discrimination with the EEOC in February. To state a prima facie case of retaliation, Plaintiff must allege: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection existed between the protected activity and the adverse action. *Wilkie v. Dept. of Health and Human Services, Inc.*, 638 F.3d 944, 955 (8th Cir. 2011). For a Title VII claim, "[r]etaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016).

According to Plaintiff's narrative, ANRC Division Chief Edward Swaim and Plaintiff's supervisor Bill Ruck met with him to discuss his 2018 Performance Evaluation on Friday, June 15th. Mr. Swaim informed Plaintiff that he had received a rating of unacceptable on his yearly performance evaluation. Mr. Swaim stated that he wanted Plaintiff to understand his responsibilities in light of the evaluation, so he brought Plaintiff a copy of the work plan and a memorandum for Plaintiff to sign acknowledging he had received the plan. Plaintiff refused to sign the memorandum. He states,

> I won't sign it because I am not in agreement with the content. [Swaim] said you still can sign because there is a clause saying you are not in agreement. I said again, no sir, I don't understand all that has been written and I need some advise [sic]. Will you again please provide an explanation? He said do you have a ride home today? I said no, he said arrange a ride to go home today. If you do not sign it, you will go home. I give you exactly one minute to sign it. I kept my calm in this explosively tense meeting room. Mr. Swaim was looking at his watch counting down the time. After a minute went by, he then said: Now go home, you do not have to stay in office today, go home and report to work on Monday.

(ECF No. 2 at p. 34).

When Plaintiff returned to work on Monday, Mr. Swaim came to his office and again asked him to sign the memorandum.

> [Swaim] took a seat and began talking and said to me I hope you used the past few days to reflect on the memorandum and that you are going to sign it today. I hope you understand that this is the plan to improve your unacceptable job performance evaluation. After he said that there was a sudden silence in the room for a few minutes. I then told him that I am still in disagreement with the outcome of my Job Performance Evaluation (PE), without any discussion or sit down meeting. . . . I continued, I hope you understand this. He responded angrily saying, "it is what it is and it will not be changed. You are going to loose [sic] your job if you don't sign the memorandum. I then paused and told him that the memorandum mentioned also many other things that I am in disagreement with it as well and for these reasons, I needed more time to seek advice. He responded "no, you have to sign it now. It is 9:00 am and I will be returning to have you sign the document. He then stated Sir, I am setting here, as your supervisor that gave you the job interview for this job, and as a lawyer, begging you to sign it, knowing, that it will be difficult for you to find a job as engineer without a license if you lose this job. I am afraid if someone asks you not to sign it how it is going to be with you.

6

*Id.* at 43. Plaintiff then informed Mr. Swaim that he was not feeling well because of the stress and he needed to stretch his body to relieve the stiffness. Plaintiff asked for another day to consider signing the memorandum. Swaim refused to give Plaintiff an additional day but told him he would come back to Plaintiff's office in a few hours. On the way out, Mr. Swaim asked Plaintiff if he had seen his evaluation and informed him that he could see it in the system.

When Plaintiff returned from stretching, Mr. Swaim was waiting in Plaintiff's office. Plaintiff informed him that he had not had time to review his evaluation. Swaim left the office without comment. A few hours later, Swaim emailed Plaintiff to tell him that he and ANRC Deputy Director Ryan Benefield would meet Plaintiff in his office at 3:30. Plaintiff describes the meeting as follows:

> Once the door was about closed, Mr. Swain tossed a document on the table and said that is the copy of the memorandum we have been asking you to sign with the copy of your PE. You have been terminated. Please provide the right contact address and the right phone number to be contacted to pick up your stuff. You can take some of your personal belongings with you and the rest will be given to you later. Someone will contact you for that. Please do not return here before that time. Please return your ID/ Building entry cards.

*Id.* at p. 44.

Plaintiff has stated that he filed a charge with the EEOC, a protected activity, and that he was fired from his job four months later. Aside from temporal proximity, there is no other allegation in Plaintiff's complaint that he was fired in retaliation for filing the charge. In fact, Plaintiff acknowledges that he was fired because he refused to sign the memorandum. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc), cert. denied, 528 U.S. 818, (1999). "Standing alone, a four-month gap weakens the inference of retaliation that arises when a

retaliatory act occurs shortly after a complaint." *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) (internal citations omitted.) The Court finds that even if all of the facts alleged by the Plaintiff are true, he has failed to state a claim for retaliation.

II. Conclusion

For these reasons, Defendant's Motion to Dismiss (ECF No. 8) is GRANTED. Plaintiff's complaint is dismissed without prejudice. The Clerk is directed to close the case.

IT IS SO ORDERED this 12th day of December, 2019.

_____
James M. Moody Jr.
United States District Judge